J-A12014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ESTATE OF: JENNIE P. GRADOS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: STEVEN P. GRADOS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 810 WDA 2021 |

Appeal from the Order Dated June 9, 2021
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s): 2619-0832

BEFORE: MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: April 25, 2022**

Steven P. Grados (Appellant) appeals, *pro se*, from the order entered in the Fayette County Court of Common Pleas Orphans' Court, denying, in part, Appellant's objections to the account of the Estate of Jennie P. Grados (Decedent), Appellant's mother. The orphans' court found Appellant failed to prove his claim that, before her death, Decedent sold his personal property stored at her home. However, the court also required further documentation from the Estate regarding rental and familial care agreements Decedent allegedly entered into with Appellant's two sisters before her death. Because we conclude the order on appeal is interlocutory and not appealable, we quash this appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We derive the facts underlying this appeal from the trial court's opinion and the certified record. Decedent had four children: Appellant, Michael, Kathy, and Jennifer. Orphans' Ct. Op., 8/4/21, at 1. Decedent executed a will in March of 2009, naming Kathy and Jennifer as co-executrixes of her estate. *See* Decedent's Last Will & Testament, 3/12/09, at 1. Other than a few specific bequests, Decedent directed that the residue of her estate be divided equally among the four siblings. *See id.*

From 1998 until 2017, Decedent resided in a home on Orchard Avenue in Belle Vernon, Westmoreland County. She also owned a farm in Fayette County. In 2017, she listed the home for sale, and, on July 18, 2017, conveyed the farm to her daughter Kathy and her husband.[1] *See* Orphans' Ct. Op. at 1. Appellant avers that, around the time of this transaction, Decedent was "experiencing obvious signs of dementia[,]" and, in fact, a neurologist diagnosed her with "stage 4 Alzheimer's Disease" in August of 2017.[2] Appellant' Objections to Accounting of Estate of Jennie Grados, 3/3/21, at 1.

---

[1] Pursuant to the March 2009 will, upon Decedent's death, the farm was to be given to the four siblings, "subject to" the condition that "neither the farm nor any component part thereof may be sold for a period of 100 years[.]" Decedent's Last Will & Testament at 1.

[2] It merits mention that the Estate denies Decedent was incapacitated, and attached to its response to Appellant's objections a sworn statement by Decedent's treating physician, dated August 17, 2017, which averred that Decedent was experiencing only a "slow decline of memory with the possibility of requiring more care over the next couple years." Estate's Response to Petition II, 3/31/21, Exhibit, Physician's Sworn Statement at 2 (unpaginated).

Sometime thereafter, Appellant and his brother Michael petitioned the orphans' court in Westmoreland County for the appointment of a guardian for Decedent. *See* Appellant's Correspondence to Response to Petition II Filed by [Estate's] Attorney, 4/12/21, Exhibit 2, Order of Court (Westmoreland County), 11/2/17, at 1. However, before the scheduled hearing was conducted, the parties reached an agreement, which provided, *inter alia*, the farm would be conveyed to all four siblings as tenants in common, and all assets in Decedent's name would remain in her individual name. *Id.* at 1-2. Further, the agreement acknowledged that Kathy and Jennifer would remain as Decedent's power of attorney, but prohibited them from gifting any of Decedent's funds in excess of $100 without the prior consent of Michael and Appellant, and required them to file an annual accounting of Decedent's financial transactions with the Westmoreland County Register of Wills. *Id.* at 3.

Pursuant to the agreement, on November 29, 2017, Kathy and her husband conveyed Decedent's farm to the four siblings as tenants in common. In the meantime, "Decedent and her daughters began emptying the . . . Orchard Avenue residence of its chattels in preparation for its sale." Orphans' Ct. Op. at 2. In July of 2018, Decedent's attorney contacted Michael's attorney requesting "contact information" for Appellant because Appellant had property

in her garage that needed to be removed before the sale.[3] *Id.* In response to Decedent's inquiry, Michael's counsel replied that Michael would make arrangements to remove Appellant's items. *Id.* at 2. Subsequently, between July 30 and September 6, 2018, Decedent and her daughters sold the chattel remaining at the Orchard Avenue home at five auctions. *Id.* Appellant insists that some of his personal belongings were sold at those auctions.

After the Orchard Avenue home was sold, Decedent lived alternatively with Kathy and Jennifer. On February 12, 2019, Decedent entered into two separate lease agreements — one with each daughter — wherein she agreed to pay both monthly rent. Thereafter, on April 3, 2019, Decedent entered into two separate "Family Care Agreements" — one with each daughter — wherein she agreed to pay both Kathy and Jennifer for caregiver services. *See* Orphans' Ct. Op. at 3. Decedent died on October 28, 2019, at the age of 87. *Id.* The Estate proceedings took place in Fayette County.

Sometime thereafter, Appellant filed a "Petition for Review" concerning the guardianship proceedings in the Westmoreland County Court of Common Pleas. On August 25, 2020, the Westmoreland County orphans' court entered an order denying the petition on the basis that it did not have jurisdiction.

---

[3] We note that in February of 2017, Appellant was incarcerated after he was found guilty of mail fraud and forgery. Orphans' Ct. Op. at 1. The record does not reveal the length of his incarceration, or where he was living in July of 2018.

Order, 8/25/20.[4]   Specifically, the court found "there [was] no basis for jurisdiction in Westmoreland County to make rulings that would impact an Estate in Fayette County when the only matter brought before [the c]ourt was in relation to a guardianship that was resolved by the parties."  *Id.* at 1 (unpaginated).

Subsequently, on September 15, 2020, Appellant filed a petition to contest the will in Fayette County.  While that petition was pending, on December 30th, the co-executrixes filed a First and Final Account of Decedent's estate.  The orphans' court held a status conference on February 19, 2021, at which time "it became clear that [Appellant] was not contesting a will at all but, rather, was challenging various *inter vivos* transfers," made while Decedent was alive.[5]  Orphans' Ct. Op. at 5.  Thus, the court granted Appellant "an additional 20 days in which to resubmit a claim in conformity with the local rules and the Pennsylvania Rules of Court."  *Id.* at 6; *see* Order, 2/23/21.

On March 3, 2021, Appellant filed objections to the accounting of Decedent's estate.  He asserted that there were "numerous discrepancies that need to be addressed[,]" and requested, *inter alia*, "proper documentation"

---

[4] On February 23, 2021, the Fayette County orphans' court took "Judicial Notice" of the Westmoreland County court's August 25th order.  Order, 2/23/21.  Thus, the August 25th order is included in the Fayette County certified record.

[5] The status conference was not transcribed.

regarding the sale of Decedent's home and its contents, and "proper accounting" regarding disbursements made to Kathy and Jennifer for the period between November 2018 and November 2019, including payments for "care" and "rent." Appellant's Objections to Accounting of Estate of Jennie Grados at 3. He also attached to his Objections a copy of a motion seeking disclosure of Decedent's medical records, which he purportedly sent to the trial court *via* email. **See id.** at Exhibit 1. However, that motion is not docketed, and it does not appear it was ever properly served or filed.

The Estate filed a response to Appellant's Objections on March 31, 2021, asserting, *inter alia*, "[t]he amounts charged for [Decedent's] care and rentals were . . . fair and reasonable and certainly more financially advantageous to [Decedent] — and the [E]state — than a personal care facility would have been if the same would have been required." Estate's Response to Petition II at 3 (unpaginated). Moreover, the Estate maintained that the Orchard Avenue home was sold while Decedent was still alive, and the funds from the sale and auctions were deposited in her accounts. **Id.** On April 12th, Appellant filed "Correspondence" in response to the Estate's filing, contradicting some of the facts he claims the Estate "misrepresented." Appellant's Correspondence to Response to Petition II Filed by [Estate] at 1 (unpaginated). As the orphans' court notes in its opinion, Appellant "never requested a hearing on any of his claims, despite being given ample opportunities to do so." Orphans' Ct. Op. at 6.

On June 9, 2021, the orphans' court entered the order on appeal.[6] First, the court denied Appellant's claim "concerning the alleged sale of personal items he claims to own that were stored in the Decedent's property." Order, 6/9/21. The court found Appellant "failed to carry his burden of proof with respect to [that] claim[.]" *Id.* However, with regard to the rental and family care agreements the Decedent entered into with her daughters, "the [c]ourt [found] the transactions to be concerning enough to require additional evidence." *Id.* Thus, the orphans' court directed the co-executrixes to supplement the record, within 30 days, with copies of the contracts, the payments made pursuant to those contracts, and the "commercial costs that would have been incurred if rental and care had not been furnished by them." *Id.* The court stated that if the documentation was sufficient, it would approve the Account, "otherwise [it would] schedule a final hearing." *Id.* The Estate complied with the court's order, and filed a response on June 23, 2021. Thereafter, on July 8, 2021, Appellant filed a notice of appeal from the June 9th order.[7]

On September 8, 2021, this Court ordered Appellant to show cause why the appeal should not be quashed or dismissed as taken from a non-final,

---

[6] The order was not docketed until June 11th.

[7] Appellant complied with the orphans' court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

interlocutory order. *See* Order, 9/8/21. Appellant filed a timely response, and on October 19th, this Court discharged the rule to show cause.[8]

Appellant frames the issues on appeal as follows:

1. Attorney Maat[t]a,[9] counsel for the co-executrixes failed to take appropriate precautions dealing with a client with diminished capacity, failed to take precautions to safe keep clients [sic] property, while engaging in conflict of interest practices.

2. A Court Order was in place from the Orphans['] Court Division of the Court of Common Pleas of Westmoreland County to protect the Decedent's assets which was violated.

3. The Decedent's medical condition of severe cognitive impairment and the existing Court Order were ignored by Attorney Maat[t]a, Attorney Christian DeDiana[10] and the co-executrixes.

4. Rental and health care agreements were entered into while the Decedent was experiencing severe cognitive impairment which should render these contracts null and void.

_____

[8] Subsequently, on January 6, 2022, the Estate file a motion to quash the appeal as having been improperly filed from an interlocutory order, and for failing to comply with the briefing requirements of the Pennsylvania Rules of Appellate Procedure. *See* Estate's Motion to Quash Appeal, 1/6/22, at 7-9 (unpaginated). This Court denied the motion without prejudice to the Estate's right to raise the issue again in a new application after the appeal was assigned to a panel. *See* Order, 2/18/22.

[9] Timothy M. Maatta, Esquire, was Decedent's attorney prior to her death, and a witness to her will. *See* Decedent's Will at 3. He is also the attorney for Decedent's Estate.

[10] L. Christian DeDiana, Esquire, is an elder law attorney who prepared the lease and care agreements between Decedent and her daughters. *See* Estate's Response to Directive by [Orphans' Court] Pursuant to [the] Order dated June 5, 2021, 6/23/21, at 1 (unpaginated).

5. Fayette County Court of Common Pleas was made aware of these facts as well as previous illegal transactions involving the transfer of the Dece[de]nt's property to the co-executrixes with the aid of Attorney Maat[t]a.

6. Proper accounting of the Decedent's estate never occurred to this date. Missing chattel from the Decedent's Estate, gas royalties from the Decedent's property and additional withdrawals from the Decedent's estate occurred without any plausible explanation.

7. The Court failed to implement safeguards to protect the Decedent from additional financial exploitation.

8. The funeral expenses accounting of the Decedent by the co-executrixes also requires further investigation before disbursement can properly be accomplished.

9. How can the estate of the decedent be settled while the accountability of the missing assets looms in this case? To attempt to settle the estate at this point would not be consistent with existing law and would be obvious error.

Appellant's Brief at 4-5.

Before we address any of the substantive claims Appellant raises on appeal, we must first determine whether the order at issue is appealable. It is well settled that "[t]he appealability of an order directly implicates the jurisdiction of the court asked to review the order[,]" and that we may inquire as to the appealability of an order *sua sponte*. **In re Estate of Cella**, 12 A.3d 374, 377 (Pa. Super. 2010) (citations omitted).

Pursuant to the Pennsylvania Rules of Appellate Procedure, an appeal may be taken from one of the following orders: (1) a final order or an order certified as final by the trial court (Rule 341); (2) certain enumerated orphans' court orders (Rule 342); (3) an interlocutory order as of right (Rule 311); (4)

an interlocutory order by permission (Rules 312 and 1311); or (5) a collateral order (Rule 313).  **See** Pa.R.A.P. 311, 312, 313, 341, 342, 1311.

Appellant does not dispute the fact that the June 9, 2021, order is not a final order pursuant to Rule 341(b)(1).  Under that subsection, an order is final if it "disposes of all claims and of all parties[.]"  Pa.R.A.P. 341(b)(1). Here, while the orphans' court denied Appellant's claim regarding the purported sale of his personal items stored at Decedent's property, the court directed the co-executrixes to provide supplemental documentation regarding the rental and care agreements they allegedly entered into with Decedent in the year before her death.  **See** Order, 6/9/21.  Appellant challenged the legitimacy of these agreements, and objected to the payments made thereunder.  Thus, the order did not dispose of all Appellant's claims.

Nevertheless, Appellant maintains the court's June 9th order is appealable as an order determined to be final by the orphans' court under Rule 341(c), a collateral order under Rule 313, or an appealable orphans' court orders under Rule 342(a)(1), (3), or (6).  **See** Appellant's Brief at 1; Appellant's Response to Rule to Show Cause for Appeal, 9/16/21, at 1 (unpaginated).  Upon our review, we disagree.[11]

Pursuant to Rule 341(c), a party may appeal an order that disposes of fewer than all claims, "only upon an **express determination** that an

---

[11] We note the orphans' court maintains the appeal is "premature," and the Estate submits that this appeal should be "quashed and/or dismissed[.]" Orphans' Ct. Op. at 8; Estate's Brief at 20.

immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(c) (emphasis added). A party seeking an express determination of finality must file an application within 30 days of the entry of the order, and the trial court must thereafter act on the application within 30 days of the filing. **See** Pa.R.A.P. 341(c)(1)-(2). Otherwise, the application "shall be deemed denied." Pa.R.A.P. 341(c)(2).

Here, the orphans' court did not expressly determine that an immediate appeal of its June 9th order would facilitate resolution of the entire case, nor did Appellant request the court make a determination of finality. Appellant's contention that the order was made appealable when "the [orphans'] court acted upon . . . the notice of appeal" and directed him to file a Rule 1925(b) concise statement, is simply incorrect. Appellant's Brief at 1. "The purpose of Rule 1925 is to narrow the focus of an appeal to those issues which the appellant wishes to raise on appeal." **Mahonski v. Engel**, 145 A.3d 175, 180 (Pa. Super. 2016). The Rule has nothing to do with a determination of finality. Thus, the order is not appealable pursuant to Rule 341(c).

We also conclude the June 9th order does not qualify as a collateral order under Rule 313. Rule 313(b) defines a collateral order as one which is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). **See CAP Glass, Inc. v. Coffman**, 130 A.3d 783, 787 (Pa. Super. 2016) ("The 'collateral order doctrine' is

- 11 -

construed narrowly, and each prong of the aforementioned test must be met before an order may be considered appealable under the doctrine.") (citation omitted).

Here, Appellant's underlying claim, regarding personal property he allegedly stored at Decedent's home is not separable from the main cause of action — that is, an accounting of the Estate — nor is it a question too important to be denied review. Furthermore, Appellant will have the opportunity to challenge the court's ruling after the accounting is approved. Thus, the June 9th order is not a collateral order pursuant to Rule 313.

Lastly, we recognize that Rule 342 permits a party to file an appeal as of right from certain orphans' court orders which may not otherwise qualify as appealable orders under the Rules of Appellate Procedure. Appellant insists the orphans' court's June 9th order is appealable as one of the following:

> (1) An order confirming an account, or authorizing or directing a distribution from an estate or trust;
>
> * * *
>
> (3) An order interpreting a will or a document that forms the basis of a claim against an estate or trust; . . . [and]
>
> * * *
>
> (6) An order determining an interest in real or personal property[.]

Pa.R.A.P. 342(a)(1), (3), (6). **See** Appellant's Brief at 1.

Again, Appellant is incorrect. The order on appeal did not confirm the Estate's accounting, but rather, directed the co-executrixes to supplement the record. Moreover, the order did not interpret any will or document which

formed the basis of a claim against the Estate. Finally, we conclude the June 9th order did not determine an interest in real or personal property. Rather, the court found, *inter alia*, that Appellant "failed to carry his burden of proof with respect to his claims concerning the alleged sale of [his] personal items he claimed . . . were stored in the Decedent's property." Order, 6/9/21. The court did not make a determination that either Appellant or Decedent owned the property in question, but simply concluded Appellant failed to present evidence to support his claim. Thus, we also conclude the order was not appealable pursuant to Rule 342.

Because we conclude the order on appeal is interlocutory, and not appealable under the Pennsylvania Rules of Appellant Procedure, we quash this appeal and remand the case to the orphans' court for further proceedings.[12]

Appeal quashed. Jurisdiction relinquished.

---

[12] Upon remand, we encourage the orphans' court to schedule a hearing on Appellant's claims. We recognize that Appellant did not specifically request a hearing. **See** Orphans' Ct. Op. at 6. Moreover, the fact that Appellant is proceeding *pro se* does not entitle him to any special treatment or advantage. **See Elliott-Greenleaf, P.C. v. Rothstein**, 255 A.3d 539, 542 (Pa. Super. 2021). Nevertheless, our review of the Pennsylvania Orphans' Court Rules reveals no requirement that a party objecting to an accounting of an estate must explicitly request a hearing. **See** Pa.O.C.R. 2.5-2.9. Here, Appellant's claims, if proven, could undermine the legitimacy of the First and Final Account of the Estate. We make no comment on whether any of Appellant's claims have merit.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2022